# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| ROBERT BERG, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>SPAN-AMERICA MEDICAL SYSTEMS, INC., JAMES D. FERGUSON, RICHARD C. COGGINS, THOMAS F. GRADY, JR., DAN R. LEE, THOMAS J. SULLIVAN, THOMAS D. HENRION, LINDA D. NORMAN, ROBERT H. DICK, TERRY ALLISON RAPPUHN, SAVARIA CORPORATION, and SAVARIA (SC) INC.,<br><br>Defendants. | Case No. 6:17-cv-01399-MGL<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on May 1, 2017 (the "Proposed Transaction"), pursuant to which Span-America Medical Systems, Inc. ("Span-America" or the "Company") will be acquired by Savaria Corporation ("Parent") and its wholly-owned subsidiary, Savaria (SC) Inc. ("Merger Sub," and together with Parent, "Savaria").

2. On May 1, 2017, Span-America's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Savaria commenced a tender offer,

set to expire on June 15, 2017, and stockholders of Span-America will receive $29.00 per share in cash.

3.      On May 17, 2017, defendants filed a Solicitation/Solicitation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Span-America common stock.

9.      Defendant Span-America is a South Carolina corporation and maintains its

principal executive offices at 70 Commerce Center, Greenville, South Carolina 29615. Span-America's common stock is traded on the NasdaqGM under the ticker symbol "SPAN."

10. Defendant James D. Ferguson ("Ferguson") is a director, President, and Chief Executive Officer ("CEO") of Span-America.

11. Defendant Richard C. Coggins ("Coggins") is a director and Chief Financial Officer ("CFO") of Span-America.

12. Defendant Thomas F. Grady, Jr. ("Grady") has served as a director of Span-America since 1975.

13. Defendant Dan R. Lee ("Lee") has served as a director of Span-America since 2008.

14. Defendant Thomas J. Sullivan ("Sullivan") has served as a director of Span-America since 2015.

15. Defendant Thomas D. Henrion ("Henrion") has served as a director of Span-America since 1996 and is Chairman of the Board.

16. Defendant Linda D. Norman ("Norman") has served as a director of Span-America since 2006.

17. Defendant Robert H. Dick ("Dick") has served as a director of Span-America since 1999.

18. Defendant Terry Allison Rappuhn ("Rappuhn") has served as a director of Span-America since 2016.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is an Alberta, Canada corporation and a party to the Merger Agreement.

21. Defendant Merger Sub is a South Carolina corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Span-America (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of May 1, 2017, there were approximately 2,764,625 shares of Span-America common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29.     Span-America manufactures and markets products to the healthcare industry for the prevention and treatment of pressure ulcers. The Company also is a manufacturer and marketer of custom foam and packaging products for the consumer and industrial markets.

30.     Recognized in medical facilities throughout North America, Span-America's product lines include: PressureGuard® therapeutic mattress systems; Geo-Mattress® therapeutic mattress systems; Geo-Matt® overlays and seat cushions; Span+Aids® patient positioners; Isch-Dish® wound care seating products; and Selan® skin care products. These products are sold through hundreds of dealers and distributors in the United States and Canada.

31.     On November 14, 2016, Span-America issued a press release wherein it reported its financial results for the fourth quarter and fiscal year ended October 1, 2016. Among other things, net income for the fourth quarter of fiscal 2016 rose 10% to $1.4 million, or $0.51 per diluted share, compared to $1.3 million, or $0.43 per diluted share, in the fourth quarter of fiscal 2015. For the full year, fiscal 2016 net income increased 6% to $4.2 million, or $1.54 per diluted share, compared to $4.0 million, or $1.33 per diluted share, in fiscal 2015. Additionally, fiscal 2016 net sales were up 5% to $67.6 million compared to $64.3 million in fiscal 2015. With respect to the results, Individual Defendant Ferguson commented:

> Span-America's earnings rose in the fourth quarter on a solid 13% increase in operating income, and our earnings per share benefited from fewer shares outstanding as a result of the stock repurchases we made near the end of fiscal 2015[.] Our growth in operating income came from a combination of higher sales

in our medical segment and improved margins in our custom products segment.

32.     On February 2, 2017, Span-America issued a press release wherein it reported its financial results for the first quarter ended December 31, 2016. Among other things, medical segment sales rose 10% to $12.5 million compared to $11.4 million in the first quarter last year. With respect to the results, Individual Defendant Ferguson commented:

> We had excellent performance from our medical business in the first quarter of fiscal 2017. Our medical segment reported strong sales growth in the first quarter, with sales rising 10% to $12.5 million and making up 82% of total first quarter sales. . . . Our outlook for fiscal 2017 remains positive[.]

33.     On May 4, 2017, Span-America issued a press release wherein it reported its results for the second fiscal quarter ended April 1, 2017. Among other things, net sales for the second quarter of fiscal 2017 were up 3% to $15.2 million compared to $14.9 million in the second quarter of fiscal 2016. Net income rose 126% to $1.7 million compared to $758,000 in the second quarter of fiscal 2016. Additionally, net income per diluted share rose 121% to $0.62 compared to $0.28 in the second quarter of fiscal 2016.

34.     Nevertheless, the Board caused the Company to enter into the Merger Agreement, pursuant to which Span-America will be acquired for inadequate consideration.

35.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Sections 6.3(a) and (b) of the Merger Agreement state:

> (a) The Company agrees that none of its, nor any of its Subsidiaries', respective directors, officers, agents, accountants, financial advisors or attorneys shall (and the Company shall direct and use reasonable best efforts to cause its and its

Subsidiaries' employees who are not officers or directors not to), directly or indirectly: (i) initiate, solicit, knowingly encourage (including by providing information or assistance) or knowingly facilitate any inquiries, proposals or offers with respect to, or the making or completion of, any proposal that constitutes, or would reasonably be expected to lead to, an Alternative Proposal, (ii) provide or cause to be provided any non-public information or data relating to the Company or any of its Subsidiaries to, or have any discussions with, any Person or its Representatives (other than Parent and its Representatives and the Company's Representatives) relating to or in connection with an actual or proposed Alternative Proposal (except to disclose the existence of the provisions of this Section 6.3), (iii) engage in any discussions or negotiations with any Person (other than Parent and its Representatives and the Company's Representatives) concerning an actual or proposed Alternative Proposal, (iv) approve, endorse or recommend, agree to or accept any actual or proposed Alternative Proposal, (v) approve, endorse or recommend, agree to or accept or execute or enter into, any letter of intent, agreement in principle, merger agreement, acquisition agreement, option agreement or other similar agreement related to any actual or proposed Alternative Proposal or (vi) agree to do any of the foregoing. Without limiting the foregoing, it is agreed that any violation of the restrictions set forth in this Section 6.3 by the Company, or any Affiliate or Representative of the Company, shall constitute a breach of this Section 6.3 by the Company.

(b) The Company shall, shall cause each of its Subsidiaries to, and shall direct each of its Representatives to, (i) immediately cease and cause to be terminated any existing activities, discussions or negotiations with any Person or its Representatives (other than the parties hereto) conducted heretofore or that may be ongoing with respect to, or that may reasonably be expected to lead to, any Alternative Proposal, (ii) request the prompt return or destruction of all confidential information previously furnished to any such Person or its Representatives and (iii) take such action as is necessary to enforce any confidentiality or "standstill" provisions or provisions of similar effect to which it is a party or of which it is a beneficiary (in the case of confidentiality or similar provisions, to the extent entered into in connection with or in relation to an Alternative Proposal); provided, however, that the Board of Directors of the Company may, to the extent the Board of Directors of the Company concludes in good faith, after consultation with its outside legal counsel, that the failure to do so would be inconsistent with its fiduciary duties under applicable law, release any Person from "standstill" provisions or provisions of similar effect solely for purposes of enabling such Person to confidentially submit to the Board of Directors of the Company an Alternative Proposal.

36.     Further, the Company must promptly advise Savaria of any proposals or inquiries received from other parties.  Section 6.3(d) of the Merger Agreement states:

(d) The Company promptly (and in any event within 24 hours) shall advise Parent

7

orally and in writing of (i) any Alternative Proposal or indication or inquiry with respect to or that would reasonably be expected to lead to any Alternative Proposal, (ii) any request for non-public information relating to the Company or its Subsidiaries, other than requests for information not reasonably expected to be related to an Alternative Proposal, and (iii) any inquiry or request for discussion or negotiation regarding an Alternative Proposal, including in each case the identity of the Person making any such Alternative Proposal or indication, inquiry or request and the material terms of any such Alternative Proposal or indication, inquiry or request (including copies of any document or correspondence evidencing such Alternative Proposal or indication, inquiry or request). The Company shall keep Parent reasonably informed of the status (including any material change to the terms thereof) of any such Alternative Proposal or indication, inquiry or request.

37. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Savaria a "matching right" with respect to any "Superior Proposal" made to the Company. Sections 6.3(e) and (f) of the Merger Agreement provide:

> (e) The Board of Directors of the Company shall not (i) withdraw, modify or qualify in any manner adverse to Parent or Merger Sub the Recommendation or (ii) make any public statement in connection with the Company Meeting, or in reference to an Alternative Proposal, that is inconsistent with the Recommendation (any action or public statement described in clause (i) or (ii) being referred to as a " Change of Recommendation "), or (iii) authorize, cause or permit the Company or any of its Subsidiaries to enter into any acquisition agreement, merger agreement or similar definitive agreement (other than any customary confidentiality agreement entered into pursuant to clause (i) above of Section 6.3(c)) (an "Alternative Acquisition Agreement") relating to any Alternative Proposal; provided, that the Board of Directors may take such actions if (and only if):
>
> (i) (A) a written Alternative Proposal is made to the Company by a Person and such Alternative Proposal is not withdrawn or (B) there has been an Intervening Event;
>
> (ii) the Board of Directors of the Company concludes in good faith (after consultation with its outside legal advisors) that the failure to take such action would be inconsistent with its fiduciary duties under applicable law;
>
> (iii) the Company shall have complied in all material respects with this Section 6.3, given Parent and Merger Sub prompt written notice advising them of the decision of the Board of Directors of the Company to take such action and (A) in the event that such decision relates to an Alternative Proposal, such Alternative Proposal

shall have been an unsolicited *bona fide* written Alternative Proposal that did not result from or arise in connection with a breach of this Section 6.3 and that in the good faith determination of the Board of Directors of the Company constitutes a Superior Proposal, and (B) the Company shall have included in such notice, as applicable, (x) the material terms and conditions of the Alternative Proposal, including the identity of the person making any such Alternative Proposal and copies of any document or correspondence evidencing such Alternative Proposal or (y) the facts and circumstances in reasonable detail of the Intervening Event;

(iv) (A) the Company shall have given Parent and Merger Sub three (3) Business Days after delivery of such notice to propose revisions to the terms of this Agreement (or make another proposal) and if Parent and Merger Sub propose to revise the terms of this Agreement (or make another proposal), the Company shall have negotiated, and shall have caused its financial and legal advisors to negotiate, in good faith with Parent and Merger Sub with respect to such proposed revisions or other proposal and (B) the Board of Directors of the Company shall have determined in good faith, after considering the results of such negotiations and giving effect to any proposals, amendments or modifications made or agreed to by Parent and Merger Sub, if any, that (x) such Alternative Proposal continues to constitute a Superior Proposal or (y) such Intervening Event continues to warrant a Change of Recommendation and, in each case, that the failure to take such action would be inconsistent with its fiduciary duties under applicable law; and

(v) in the case of authorizing, causing or permitting the Company or any of its Subsidiaries to enter into any Alternative Acquisition Agreement, the Company shall have validly terminated this Agreement in accordance with Section 8.1(g), including the payment of the Termination Fee in accordance with Section 8.2.

(f) In the event the Board of Directors of the Company does not make the determination referred to in Section 6.3(e)(iv)(B) of this paragraph and thereafter determines to effect a Change of Recommendation pursuant to Section 6.3(e), the procedures referred to above shall apply anew and shall also apply to any subsequent Change of Recommendation. Following each and every material revision to such Superior Proposal, the Company shall be required to deliver a new written notice to Parent and to again comply with the requirements of Section 6.3(e) with respect to such new written notice, except that the three (3) Business Day period referred to in Section 6.3(e)(iv)(A) shall be reduced to two (2) days (one (1) of which must be a Business Day).

38.     Further locking up control of the Company in favor of Savaria, the Merger Agreement provides for a "termination fee" of $2.825 million, payable by the Company to Savaria if the Individual Defendants cause the Company to terminate the Merger Agreement.

39.     By agreeing to all of the deal protection devices, the Individual Defendants have

locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

40. The merger consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

41. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

42. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

43. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

44. The Solicitation Statement omits material information regarding the Proposed Transaction, which renders the Solicitation Statement false and misleading.

45. First, the Solicitation Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor, Robert W. Baird & Co. Incorporated ("Baird"), in support of its so-called fairness opinion.

46. With respect to Span-America's financial projections, the Solicitation Statement fails to disclose: (i) unlevered free cash flows; (ii) the constituent line items used in calculating unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

47. With respect to Baird's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) unlevered free cash flows and the constituent line items used by Baird in connection with the analysis; (ii) Span-America's estimated terminal value; and (iii) Baird's basis

10

for using a discount rate range of 10.5% to 12.5%.

48.     With respect to Baird's *Selected Publicly Traded Company Analysis*, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the companies observed by Baird in the analysis.

49.     With respect to Baird's *Selected Transactions Analysis*, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Baird in the analysis.

50.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

51.     The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: "The Solicitation or Recommendation."

52.     Second, the Solicitation Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

53.     Specifically, the Solicitation Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Span-America's officers and directors, including who participated in all such communications.

54.     Communications regarding post-transaction employment during the negotiation of

the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: "The Solicitation or Recommendation."

56. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Span-America's stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

59. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

60. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

61. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

62. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

63. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

64. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

65. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

66. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

67. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

68. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

70. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and

the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

71. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

72. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

73. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

74. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and Savaria)

75. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76. The Individual Defendants and Savaria acted as controlling persons of Span-America within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Span-America and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the

14

Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

77. Each of the Individual Defendants and Savaria was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

78. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

79. Savaria also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

80. By virtue of the foregoing, the Individual Defendants and Savaria violated Section 20(a) of the 1934 Act.

81. As set forth above, the Individual Defendants and Savaria had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

82. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

83. Plaintiff and the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

[*signature on the following page*]

Respectfully submitted,

Dated: May 26, 2017                                **NEXSEN PRUET, LLC**

By:   *s/Sima Bhakta Patel*
Sima Bhakta Patel (Fed. ID # 11372)
Andrew A. Mathias (Fed. ID # 10166)
P. O. Drawer 10648
Greenville, South Carolina 29603
Telephone: (864) 282-1163
Facsimile: (864) 477-2631
E-Mail: spatel@nexsenpruet.com
amathias@nexsenpruet.com

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, Delaware 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
gms@rl-legal.com

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 3112
Berwyn, Pennsylvania 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

ATTORNEYS FOR PLAINTIFF